USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 7/21/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                         :
                         : **ORDER GRANTING MOTIONS**
ALFREDO VILLOLDO, et al.,        : **TO DISMISS**
                         :
             Plaintiffs,      :
      -against-                   :
                         : 14 Civ. 9930 (AKH)
BNP PARIBAS S.A. AND BNP PARIBAS  :
NORTH AMERICA, INC.,         :
                         :
            Defendants.     :
                         :
                         :
------------------------------------------------------------- X
                         :
                         :
ALFREDO VILLOLDO, et al.,        :
                         :
            Plaintiffs,      :
      -against-                   : 15 Civ. 268 (AKH)
                         :
ING BANK, N.V.,             :
                         :
            Defendant.      :
                         :
                         :
------------------------------------------------------------- X
                         :
                         :
ALFREDO VILLOLDO, et al.,        :
                         :
            Plaintiffs,      :
      -against-                   : 15 Civ. 496 (AKH)
                         :
HSBC BANK USA, N.A., and HSBC    :
HOLDINGS PLC,              :
                         :
            Defendants.     :
                         :
                         :
------------------------------------------------------------- X

1

ALVIN K. HELLERSTEIN, U.S.D.J.:

   Plaintiffs bring three related cases before me, in a creative attempt to collect

further on default judgments they possess against the Republic of Cuba. Defendants BNP

Paribas S.A. and BNP Paribas North America, Inc. (the "BNP Defendants"), ING Bank N.V.

(the "ING Defendant"), HSBC Bank USA, N.A. and HSBC Holdings PLC (the "HSBC

Defendants") (collectively, "Defendants") move before Answer to dismiss the complaints in each

action, filed December 16, 2014, January 14, 2015, and January 22, 2015, respectively. For the

reasons set forth below, the motions are GRANTED.

## BACKGROUND

   Plaintiffs Alfredo Villoldo and Gustavo E. Villoldo ("Plaintiffs") are judgment

creditors against the Republic of Cuba for a default judgment obtained in Florida on August 19,

2011, and entered in this court on October 25, 2012, in the amount of $2,903,233,898.07. (*See*

14-cv-9930 Dkt. No. 1 at ¶ 6.) Plaintiffs had previously intervened in another case before me,

*Vera v. the Republic of Cuba*, 12-cv-1596. In those proceedings, Plaintiffs, along with two other

judgment creditors, Aldo Vera, Jr., and Jeanette Fuller Hausler (collectively, the "Judgment

Creditors"), seek to recover on their respective default judgments against the Republic of Cuba.

In order to do so, the Judgment Creditors are allocating amongst themselves Cuban funds which

were deposited in New York banks (*see, e.g., id.* at Dkt. No. 323), as well as funds resulting from

blocked electronic fund transfers ("EFTs") which emanated from Cuba, its agencies or

instrumentalities, were transmitted to New York banks for clearance purposes, and were intended

for remittance to others (*see, e.g., id.* at Dkt. No. 767). These funds are available to attachment

by the Judgment Creditors, who were victims of Cuba's state-sponsored terrorism during the

2

regime of Fidel Castro, through the Terrorism Risk Insurance Act of 2002 ("TRIA"). The TRIA

provides that "in every case in which a person has obtained a judgment against a terrorist party

on a claim based on an act of terrorism, or for which a terrorist party is not immune ... the

blocked assets of that terrorist party (including the blocked assets of any agency or

instrumentality of that terrorist party) shall be subject to execution or attachment in the aid of

execution in order to satisfy such judgment to the extent of any compensatory damages for which

such terrorist party has been adjudged liable". 28 U.S.C. § 1610. The funds available through

these means are not sufficient to satisfy the judgments the Judgment Creditors possess. (*See* 14-

cv-9930 Dkt. No. 1 at ¶ 8.)

Plaintiffs then filed the three instant actions against three sets of financial

defendants: the BNP Defendants, the ING Defendant, and the HSBC Defendants, alleging that

the Defendants were liable to Plaintiffs for violations of the Racketeer Influenced and Corrupt

Organizations Act ("RICO") for wire fraud and money laundering, as well as for violations of

New York fraudulent transfer and New York tortious interference[1]. (Dkt. No. 1 at pp. 26-36, 15-

cv-268 Dkt. No. 1 at pp. 29-37; 15-cv-496 Dkt. No. 1 at pp. 21-30.)

Plaintiffs allege that each of the Defendants[2] entered into plea agreements with

the United States government, in which they admitted to conspiring to violate, and violating,

U.S. banking laws by processing U.S. dollar transactions involving Cuba. Each of the

complaints attaches the respective plea agreement, and largely tracks the Defendants' admissions

in those agreements. The complaints allege that the BNP Defendants failed to freeze

approximately $1.747 billion from October 2004 to early 2010 (14-cv-9930 Dkt. No. 1

---

[1] Plaintiffs only bring the claim for New York tortious interference against the BNP Defendants.
[2] BNP Paribas North America, Inc. asserts in its motion that the plea agreement BNP Paribas S.A. signed makes no mention of BNP Paribas North America, Inc., and therefore it should be dismissed. As I find all claims legally insufficient against all parties, I need not reach this argument.

3

at pg. 25), the ING Defendant approximately $1.6 billion from October 22, 2002, to July 6, 2007 (15-cv-268 Dkt. No. 1 at pg. 29), and the HSBC Defendants over $30 million from the mid-1990s through December 7, 2007 (15-cv-496 Dkt. No. 1 at pp. 11-21). Under the RICO statute, Plaintiff requests treble damages, in amounts totaling $5.421 million against the BNP Defendants (14-cv-9930 Dkt. No. 1 at pp. 36-37), $4.962 billion against the ING Defendant (15-cv-268 Dkt. No. 1 at pg. 38), and $90 million against the HSBC Defendants (15-cv-496 Dkt. No. 1 at pg. 30).

## LEGAL STANDARD

A motion to dismiss should be granted if the complaint "fails to state a claim upon which relief can be granted." Fed .R. Civ. P. 12(b)(6). The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal punctuation omitted); *see also* Fed. R. Civ. P. 8(a)(2). The court accepts the non-moving party's factual allegations as true and draws all reasonable inferences in its favor. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008).

"To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (quoting *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001)). In order to satisfy the causation requirement, the defendant's injurious conduct must be "both the factual and the proximate cause of the injury alleged". *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003) (citing *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)).

4

## DISCUSSION

The purpose of RICO is "the elimination of the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce." S.Rep. No. 617, 91st Cong., 1st Sess. 76 (1969). As Judge Posner wrote in *Fitzgerald v. Chrysler Corp.*, "[w]hen a statute [specifically, RICO] is broadly worded in order to prevent loopholes from being drilled into it by ingenious lawyers, there is a danger of its being applied to situations absurdly remote from the concerns of the statute's framers". 116 F.3d 225, 226 (7th Cir. 1997). This describes the instant case. Defendants in their motions raise numerous arguments why the complaints in the above-captioned cases should be dismissed. For the sake of brevity, I address Plaintiffs' failure to plead: (i) injury to business or property; (ii) causation; (iii) fraudulent conveyance; and (iv) tortious interference. These failures suffice to dismiss Plaintiffs' complaints.

### I. Injury to Business or Property.

Plaintiffs allege that the Defendants' actions injured their property, which was "the inability to collect on their judgment" or "arising from their judgment". (14-cv-9930 Dkt. No. 1 at ¶¶ 31 & 40; 15-cv-268 Dkt. No. 1 at ¶ 27 & 36; 15-cv-496 Dkt. No. 1 at ¶¶ 28 & 37.) Plaintiffs did not receive their first judgment, however, until August 19, 2011, which was years after all of the alleged transfers were completed.

A party does not have standing under RICO for injury to an expectancy interest. *See McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 228 (2d Cir. 2008), *abrogated on other grounds by sub nom. Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008); *see also Donohue v. Teamsters Local 282, Welfare, Pension, Annuity, Job Training & Vacation & Sick Leave*, 12 F. Supp. 2d 273, 277-78 (E.D.N.Y 1998) (quoting *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998) and citing *Oscar v. University Students Co-Op. Ass'n*, 965 F.2d 783, 785 (9th

5

Cir. 1992). In the instant case, Plaintiffs had only an expectancy interest in the wire transfers that were allegedly fraudulently transferred by the Defendants, as Plaintiffs did not, as of the dates of the alleged transfers, possess a judgment or any other property interest in them. Failure to plead injury to business or property is fatal to Plaintiffs' RICO claims.

## II. Causation.

Under the causation requirement of RICO, Plaintiffs need show both but-for and proximate causation. *See Lerner*, 318 F.3d at 120. Plaintiffs fail to show that the alleged actions of Defendants were a proximate cause of the injury to Plaintiffs' business or property for which redress is sought. *See Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1344 (2d Cir. 1994); *see also Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120, 129-30 (2d Cir. 2003).

Plaintiffs allege that the injury to their business or property is their "inability to collect on their judgment". (14-cv-9930 Dkt. No. 1 at ¶¶ 31; 15-cv-268 Dkt. No. 1 at ¶ 27; 15-cv-496 Dkt. No. 1 at ¶¶ 28.) That default judgment is against the Republic of Cuba, who did not appear in the underlying proceedings, and from whom Plaintiffs have been unable to collect. Plaintiffs turn to Defendants in an attempt to recover on their judgment only because the Republic of Cuba is not paying—an intervening direct cause of the Plaintiffs' injuries, which breaks the chain of proximate cause. *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994). As Plaintiffs do not plead proximate cause, in addition to injury to their business or property, their RICO claims do not survive the motions to dismiss.

## III. Fraudulent Conveyance.

In addition to RICO violations, Plaintiffs allege that the Defendants are liable to them for violations of fraudulent conveyance under New York Debtor and Creditor Law § 279.

6

A fraudulent conveyance claim can only proceed against parties who participate in the fraudulent transfer of a debtor's property and transferees and beneficiaries of the challenged conveyances. *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1172 (2d Cir. 1993) (citing *FDIC v. Porco*, 75 N.Y.2d 840, 842 (1990) (per curiam). Aiding and abetting a challenged conveyance, even in return for fees, does not make a party liable for fraudulent conveyance. *See, e.g., Gallant v. Kanterman*, 198 A.D.2d 76, 80 (N.Y. App. Dev. 1st Dep't 1993). Plaintiffs' conclusory statements that the Defendants "were beneficiaries" of the challenged conveyances as a result of their "charging and collecting substantial fees and commissions" (*see, e.g.*, 14-cv-9930 at ¶ 50) does not state a claim for which relief can be granted.

Claims of fraudulent conveyance, as they sound in fraud, are also subject to the heightened pleading standard of Fed. R. Civ. P. 9(b). This standard requires, among other elements, that Plaintiffs plead with particularity Defendants' intent to hinder, delay, or defraud creditors. *See In re Sharp Intern. Corp.*, 403 F.3d 43, 56 (2d Cir. 2005). Plaintiffs' complaints, which merely state that "the purpose of the transfer was to frustrate creditors of Cuba, including Plaintiffs", does not meet this heightened standard. (*See, e.g.*, 14-cv-9930 Dkt. No. 1 at ¶ 51.) As detailed above, Plaintiffs did not possess judgments as of the date of the alleged fraudulent transfers, and Plaintiffs' complaints do not detail how Defendants could have intended to frustrate creditors of whom they were not even aware.

## IV. Tortious Interference.

Plaintiffs similarly fail to plead a claim for tortious interference, which is only pled against the BNP Defendants. Under New York law, a creditor must have a lien or other interest in fraudulently transferred property of the debtor in order to maintain an action for tortious interference. *Federal Deposit Ins. Corp. v. Porco*, 147 A.D.2d 422, 423 (1st Dep't

1989). Plaintiffs did not receive their first judgment until August 19, 2011, and their complaint against BNP only alleges that BNP performed transfers related to Cuba before 2010. As Plaintiffs could have no interest in the transferred assets before August 19, 2011, this claim fails as a matter of law.[3]

## DISCUSSION

For the reasons stated above, Plaintiffs' complaints do not adequately plead any causes of action, and must therefore be dismissed.

The Clerk shall mark all open motions terminated, enter judgment for the Defendants, and mark the cases closed.

SO ORDERED.

Dated:     New York, New York
           July 21, 2015

ALVIN K. HELLERSTEIN
United States District Judge

---

[3] Plaintiffs' reliance on the First Department's language in *Strachman v. Palestinian Authority*, 901 N.Y.S.2d 582, 586 (1st Dep't 2010), is misplaced. In that case, the Plaintiffs were already in possession of a default judgment against the Palestinian Authority, and the alleged interference occurred later, when Plaintiffs were attempting to recover on that judgment.